FREDERICK FOX, in equity, vs. ELIZA A. GIBBS, and others.

Cumberland.   Opinion December 2, 1893.

*Will.   Charitable Trust.   Benevolent and Charitable Purposes.*

A residuary clause in a will, which gives to trustees all of the testator's
estate, real and personal, remaining after the payment of certain other
bequests, to be expended by such trustees at their discretion only for "be-
nevolent and charitable purposes," is not void for its generality and indefi-
niteness; nor because the word benevolent is used with the word charitable
to express the testator's wishes.

While a devise or bequest to trustees for such benevolent purposes as are not
also charitable would be void, the two words when coupled together in a
testamentary gift will be taken to mean no more than the word charitable
implies when used alone and in a legal sense; unless a different construction
is clearly established by other portions of the will.   The purposes are to be
both benevolent and charitable, and not benevolent, or liberal, or generous,
merely.

ON REPORT.

Bill in equity, heard on bill and answer, brought by Freder-
ick Fox, surviving executor and trustee, to obtain the con-
struction of the residuary clause in the will of Joseph Walker,
of Portland, deceased.

From the joint and several answers of the respondents, it
appears that the residuary fund remaining in the hands of the
executor, after payment of debts and legacies, amounts, at the
appraisal, to $225,000; and that the respondents are all heirs-
at-law of said Walker, and are all of them legatees under said
will, and have all received the legacies given them thereby.

Answering further they say, "that they are advised and
believe and therefore allege, that the trusts attempted to be
created in and by the thirty-seventh item of said will are invalid
and void, and that all the said residuary fund descends as
undevised property to said respondents," &c.

The clause of the will in question is stated in full in the
opinion.

*Frederick Fox, Symonds, Snow and Cook*, for plaintiff.

*Nathan and Henry B. Cleaves, Stephen C. Perry and Henry W. Swasey*, for Albert D. Walker.

While respondent admits that the residuary clause contains the words charities, schools, libraries, hospitals and other general words such as have become recognized as terms within charitable uses, yet the respondent's contention against same is that these terms are so undefined with respect to testator's intention with specific reference to them, and they are so involved with other terms and language not terms of charitable intent, as to leave it entirely uncertain what testator intended to do.

The whole tenor of the introductory, interlocutory and explanatory portion of the clause is not with reference to any charities existing and well-defined in testator's mind ; but is a process of ratiocination and a theorizing on problematical premses ; and is not an expression of a certain, well-defined, deliberate testamentary intention with reference to any specific charity or well-defined class of charities.

The words constitute a most general, indefinite and unlimited and unclassified declaration of a desire and wish so broad and universal, and whose scope is so undefined that there is in this expression of testator's wish no guide or limit for the direction of those who should undertake to administer the attempted trusts. The objects and purposes of the will are not only uncertain and vague, but are not confined to charities. While the term, "benevolence," may be subject to have its purposes defined and limited by its connection with the term charity, and benevolent by its connection with charitable, yet no such limitation exists in the case at bar. The fair construction of the whole clause leads legitimately to the conclusion that the testator's hope, wish and desire was as broad and wide as any and all the schemes and language of the clause unfettered by any limitation of any terms. Benevolence, pure and simple, is not charity within the limits of a charitable use. 1 Bigelow's Jarman, 6th ed. p. 170. *Chamberlain* v. *Stearns*, 111 Mass. 267. So as to, "worthy individuals needing aid," this has elasticity and breadth enough to extend a bounty under the will, ".for the benefit of particular individuals to benefit whom would

be of no general or public advantage." It is too indefinite to be carried out. *Sheedy* v. *Roach*, 124 Mass. 476 ; *Nichols* v. *Allen*, 130 Mass. 211 ; *Olliffe* v. *Wells*, *Id.* 221. In *Beekman* v. *People*, 27 Barb. 260, a bequest was of the residue to executors in trust to pay and apply same in such sums and at such times as they should think fit, to one or more societies for the support of indigent respectable persons, giving them full discretionary power as to the disposition of the same, but so that it shall be applied to objects of charity ; held void for being for a general, indefinite charitable purpose without fixing any particular object.

This is not a case of ambiguous or contradictory terms to be so construed as to support some definite charity within testator's specific testamentary purpose, as in *Jackson* v. *Phillips*, 14 Allen, 556 ; for neither the preamble nor the disposing part of this article shows any specific and definite intention with reference to any distinct object.

The personal discretion conferred on the trustee cannot be controlled or enforced by the court. *Meggison* v. *Moore*, 2 Vesey. Jr., 630.

The testator has wholly failed to describe any existing charity ; he has not created any definite charitable use ; he has not specified any distinct benevolent purpose ; and he has not described any particular class of individuals worthy of his aid and for whom and which, or for the benefit of whom or which, the court might order the attempted trusts to be administered as near as may be. The bequest is general and does not define or describe what proportion or what part of the residue shall be for charities, what for, "benevolence," or what for, "worthy persons needing aid." Trustee cannot by his administration of the trust make a charity out of what the language of the will does not clearly and definitely create as a charity. Nor can trustee ignore testator's, "wish, hope and desire," touching what we claim was his disposition for and towards, "benevolence," pure and simple, or for and towards, "worthy persons needing aid ;" for this would be to obliterate such portion of the will as shall not fall within the definition of a charitable

use. Such a power was held void in *Adye* v. *Smith*, 44 Conn. 60. The bequest must be limited to the purposes of a charity by interpretation, if at all, and not by the power of the court over it after the limit is established. 2 Red. Wills. p. 506; *Rotch* v. *Emerson*, 105 Mass. 433; *Nichols* v. *Allen*, 130, Mass. 211; *Kelly* v. *Nichols*, 17 R. I. 306.

The doctrine of *cy pres* does not apply to a bequest which is not made to a charitable use. 2 Story Eq. § § 1154-1157; Adams Eq. ( 8th Ed.) p. 73; Perry Trusts, § 729; 1 Bigelow's Jarman (6th Ed.), p. 212, citing, *Re Joy, Purday* v. *Johnson*, 60 L. T. 175; *Kelly* v. *Nichols, supra.*

To determine the nature of the bequest, the question is not alone what result did testator hope to subserve, but what did he order to be done. And if a gift is not to be a charitable use, the court cannot make it such, simply because testator hoped its effect would be to accomplish a charitable end. *Kelly* v. *Nichols, supra; Fire Ins. Patrol of Phil.* v. *Boyd.* 120 Pa. St. 624.

*Everett* v. *Carr*, 59 Maine, 325, and cases cited therein, each and all imply that the object of the charity must be clearly ascertainable, as by a nomination to some definite body that is imperfectly or improperly designated, to some distinct association or body not then *in esse*, or to some definite class of persons in general comprising some distinct charity, or to charity, as such, absolute and unqualified, thus giving occasion for exercise of the *cy pres* doctrine.

Counsel also cited *People* v. *Dashaway Association*, 84 Cal. 114.

*S. C. Strout, H. W. Gage and C. A. Strout*, for Eliza A. Gibbs, and others.

The fund was designed to be used for three objects, education, charity and benevolent purposes. To couple, "charitable" and "benevolent," together so that they shall mean charitable only, deprives the word benevolent of its meaning. It is used no less than six times. Testator did not make use of the word so many times for no purpose whatever. All the cases make a distinction between the words. It cannot be treated as surplusage,

and if synonymous with charity, as in some cases, nothing appears here to show such intention; on the contrary, it clearly appears the intention to make three distinct objects and purposes. As the fund is not apportioned it cannot be upheld as to the benevolent objects by reason of uncertainty, and the entire bequest fails.

Counsel also cited : *Knight* v. *Knight*, 3 Beav. 148 ; *Wright* v. *Atkyns*, 1 T. & R. 143 ; *Morice* v. *Bishop of Durham*, 10 Ves. 521 ; *Going* v. *Emery*, 16 Pick. 107 ; *Drew* v. *Wakefield*, 54 Maine, 297 ; *Sanderson* v. *White*, 18 Pick. 328 ; *Maine Bap. Miss. Conv.* v. *Portland*, 65 Maine, 92 ; *Williams* v. *Kershaw*, 5 Cl. & Fin. 111. Void bequests : *James* v. *Allen*, 3 Mer. 17 ; *Ellis* v. *Selby*, 7 Sim. 352 ; *Brown* v. *Yeall*, 7 Ves. 50 ; *Bridges* v. *Pleasants*, 4 Ired. Eq. 26 ; *Chamberlain* v. *Stearns*, 111 Mass. 267 ; *Vesey* v. *Jamson*, 1 S. & S. 69 ; *Morris* v. *Thompson*, 4 C. E. Greene, 307 ; *Mitford* v. *Reynolds*, 1 Phill. 185 ; *Nash* v. *Morely*, 5 Beav. 177 ; 2 Story's Eq. § § 979, 1141, 1155, 1157-8 ; Redf. Wills, Part II, pp. 773, 779, 781, 830 ; Hill Trust, pp. 452, 454 ; 1 Jar. Wills, 399, 404 ; 2 Perry Trusts, 711 ; Tudor Char. Trusts, 223.

SITTING : PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, WHITEHOUSE, JJ.

PETERS, C. J.   Joseph Walker, the testator, dying childless, left a will containing thirty-six bequests of public and private donations, and ending with the following residuary clause :

" *Thirty-seventh.*   Inasmuch as there may be charities, in Portland, or the vicinity thereof, and which if I were living, I might desire to assist, or benevolent and charitable objects and associations, which if I were alive, I might desire and wish to promote and strengthen by gifts, and pecuniary help ; or schools and places of learning, or hospitals, or libraries, which if aided financially would increase the benefits and advantages derived from education and instruction ; or worthy individuals needing pecuniary assistance to obtain knowledge ; or institutions and

associations formed and organized for the welfare, advancement, benefit and good of the public, and which if living, I should manifest an interest therein, and therefore aid and assist the same; and with the intention, hope, wish, and desire that the rest, residue, and remainder of my estate, may be used to benefit society, relieve pain and distress, assist worthy and deserving charitable and benevolent associations and objects, give instruction and education to those who are seeking for the same :— in order therefor to carry out my views and wishes, I do, therefore, for the proper execution of these purposes hereby give, devise, and bequeath in trust, unto Frederick Fox and Albert B. Stevens, both of said Portland, and the survivor of them and to their successors as my trustees, and upon the following conditions and trusts, all the rest, residue, and remainder of my estate of every description, real, personal and mixed, together with any and all estate and bequests, residue or any other part or portion of my estate which by the terms and items of this my last will and testament have, shall, or may become, make and form a portion of said remainder and residue of my said estate ; and said gifts, bequests, and devises are made to said Fox, and said Stevens, and the survivor, and their successors as my trustees, upon the following conditions and trusts, and for the due performance by my trustees of the following duties and trusts, viz : my said trustees as aforesaid, shall within fifteen years from my decease, use, give, and expend, also distribute said rest, residue and remainder of my estate with interest, dividends, income, and all accumulations arising or growing out of the same, for the causes of education, and learning, for the promotion, assistance and growth of benevolent, and charitable associations and objects. Said trustees as aforesaid, shall not be restricted in this work. They are to be the sole judges in what manner said residue and remainder of my estate shall be so used and expended ; and to whom, to what organizations and objects ; in what amounts ; and at what times ; in what manner, and under what restrictions, conditions and regulations the same shall be given, used, expended, and distributed ;— the only restrictions and conditions I put upon said trustees as aforesaid being, that all

of said residue, and income and accumulations as aforesaid, shall be used, given, expended and distributed by them for worthy, educational, charitable, and benevolent purposes and objects, and not for any other purposes whatever; said duties and acts of my said trustees to be done and performed within the County of Cumberland, State of Maine, and during said fifteen years from my decease.

"The charities I have remembered in this my last will and testament, if thought advisable by my trustees, may be further assisted; hospitals, schools, seats of learning, charitable and benevolent associations not organized or created at the date of this will, but which shall or may be created hereafter, and worthy individuals needing aid are to be helped by my trustees from said remaining trust estate and the income thereof, if said trustees think it wise so to do and under the restrictions I have placed upon said trustees."

Some of the heirs-at-law of the testator oppose the approbation of this residuary bequest by the court, contending that it is void for its indefiniteness and uncertainty. This objection is not taken, however, by all the counsel for the different contestants.

It is maintained by some writers that the very omission of specification as to persons and objects in a bequest of this kind is a distinctive test of its true charitable character, and that the trustee or the court can supply a much better scheme for the distribution of the fund than is apt to be found in the many wills where testators have imagined that their wishes could be subserved by annexing impracticable restrictions and conditions to their bequests. Be that as it may, we deem the question as not now an open one in this State, as the objection here presented has been repeatedly overruled by our own decisions. It would be useless to review the doctrine anew either upon the general authorities or upon principle. *Howard* v. *American Peace Society*, 49 Maine, 288; *Swasey* v. *American Bible Society*, 57 Maine, 523; *Simpson* v. *Welcome*, 72 Maine, 496: *Dascomb* v. *Marston*, 80 Maine, 223; *Everett* v. *Carr*, 59 Maine, 334. In the last case cited, a bequest was sustained

which directed funds to be annually paid to a person for such person "to use for charitable purposes and objects." The Massachusetts cases take the same view of this question. *Bullard* v. *Chandler*, 149 Mass. 532; *Minot* v. *Baker*, 147 Mass. 348; and cases there cited.

The other and principal objection to the bequest in question is that it empowers the trustees to use the funds, intrusted to them, for benevolent purposes which are not charitable. This objection must be fatal to the validity of the bequest if such was the intention of the testator. Trusts cannot be upheld which are devoted to mere benevolence, or liberality, or generosity. And if these trustees can appropriate any of the funds to benevolence they can use all of them for that purpose.

But the question arises as to the meaning of the word benevolent in its connection with all the other terms of the will. Benevolence may or may not be charitable in the legal sense. The perplexity comes from the fact that the word is used with different meanings according to circumstances, it sometimes signifying liberality and generosity and sometimes charity in the technical sense of the word. Charity may be benevolence, but all benevolence is not necessarily charity. Here the questionable phrases are "benevolent and charitable objects and associations," "worthy and deserving charitable and benevolent associations and objects," "worthy educational, charitable and benevolent objects and purposes."

We are much impressed with the belief that neither the scrivener or testator supposed that they were constructing any but charitable bequests. The word benevolent was inserted to intensify the word charitable rather than otherwise. The two words are coupled as one expression. It is charitable *and* benevolent, and not *or* benevolent. There is much on the face of the will to induce this conclusion. The testator makes numerous bequests of a specific character which may be denominated benevolent, and no doubt made as many as he contemplated of that kind of gift. His mind seems to have been intensely imbued with ideas of "schools and places of learning," of "hospitals and libraries," of the "advantages of education and instruction," of "worthy

individuals needing pecuniary assistance to obtain knowledge,' and of using his residuary estate "to benefit society and relieve distress and pain." He speaks of "institutions organized for the welfare and advancement, benefit and good of the public." His mind dwells somewhat on "organizations and associations," thinking no doubt of charitable institutions. He speaks in several instances of "charities," and not of benevolences. He limits the use of his estate to the general purposes named by him, and cautions his trustees that the funds are to be so used "and not for any other purpose whatever." All the clauses of this final bequest are impressive evidence of the desire of the testator that his remaining estate should be disposed of for the public good. The bequest breathes the spirit of charity in all its lines and nothing else. We think it would have shocked the testator to believe that two or three hundred thousand dollars of his property might by any possibility be expended by his trustees for purposes not strictly charitable. In his own mind the words benevolent and charitable were undoubtedly regarded as synonymous terms.

But does the law permit us to adopt the construction which we have indicated? We have no hesitation in answering this inquiry in the affirmative. Such a decision will be in consonance with the liberal views and expressions of this court in its interpretation of all kindred subjects and questions. In fact, the words in question as occurring in our statutes on the subject of taxation have already been interpreted by this court. In *Maine Baptist Missionary Convention* v. *Portland*, 65 Maine, 92, it is said in the opinion : "It may be difficult to say what a 'benevolent institution' is if it differs from one that is merely charitable." And in *Bangor* v. *Rising Virtue* [*Masonic*] *Lodge*, 73 Maine, 428, APPLETON, C. J., remarks for the court : "The statute upon which the defendants rely, uses the word benevolent, but there is no question that this word, when used in connection with charitable, is to be regarded as synonymous with it and as defining and limiting the nature of the charity intended."

There are precedents strongly advocating the principle in several of the New England states, and it is now the doctrine

of the English courts. The doctrine is also accepted in some other of the American States and rejected in others. A few cases only need be cited for present purposes. *Saltonstall* v. *Sanders*, 11 Allen, 446, an exhaustive case ; *Rotch* v. *Emerson* 105 Mass. 431 ; *Suter* v. *Hilliard*, 132 Mass. 412. See *Chamberlain* v. *Stearns*, 111 Mass. 267, for citation of cases on both sides of the question, including English cases. *Pell* v. *Mercer*, 14 R. I. 425 ; *Goodale* v. *Mooney*, 60 N. H. 528. In the last two cases cited the word benevolent, without being coupled with the word charitable, is construed from the context to have the meaning of the latter word. Those cases hold that the two words may be regarded as equivalent or analagous expressions. Mr. Perry and Mr. Boyle strongly approve of the general doctrine which we adopt as applicable to the present facts. Perry on Trusts, (4th ed.) § 712 ; Boyle on Charities, pp. 286-299.

It follows, therefore, that the surviving trustee is entitled to receive from himself as surviving executor the estate and property described in the residuary clause, being bequest thirty-seven, and as such trustee he is entitled to control and administer all the same according to the terms of such residuary clause as herein construed ; and there must be a

*Decree accordingly*.