WILLIAM E. MURDOCK, In Equity,

*vs.*

JOHN N. BRIDGES, and others.

Penobscot.   Opinion December 27, 1897.

*Executed and Void Trusts.   Statute of Wills.*

The plaintiff on July 15th, 1896, received from one Ann Banks $1200, and at the same time took from her a writing of the following tenor:—

" To whom it may concern:   This is to certify that I have this day appointed W. E. Murdock to look after my property and pay all my honest debts, and after that to keep in trust all of my personal property, and to look after my husband, Nathan E. Banks, the rest of his days, and to pay his honest debts with the balance of my personal property, and after his death, the balance shall go to the people who have cared for me, as W. E. Murdock shall think best."

Under this authority plaintiff paid for Ann Banks one hundred dollars, leaving a balance of $1100 principal in his hands.   Ann Banks died August 1st, 1896, and Nathan E. Banks died on the 28th of the following October, leaving a small estate.   *Held;* that the plaintiff is a trustee of an executed trust, and holds the fund which he received from Ann Banks in trust for her heirs at law, to be paid to her administrator for distribution.

*Also;* that a trust was created by said writing for two purposes; first, to pay the debts of the cestui que trust, and second, to provide for her husband.

*Also;* that the remaining purpose of the distribution in the plaintiff cannot be exercised, because it is an attempted disposition of property among a class of persons wholly uncertain, to be selected by the plaintiff and distributed among them as he may choose; and as a testamentary disposition of property it must fail for not complying with the statute of wills. As a trust, it must likewise fail for want of certainty and because it is a pure benevolence and not a charity.

*Held;* that a decree of interpleader, under these circumstances, is not required, and the defendant's demurrer is therefore well taken.

ON REPORT.

This was a bill of interpleader filed April 6th, 1897, by William E. Murdock of Springfield, in the county of Penobscot, against John N. Bridges, administrator of the estate of Ann Banks late of said Springfield, deceased, and against Lewis Thornton, Rosetta A. Thornton and Katherine Hebb. The material portions of the bill are as follows:—

First. That on the fifteenth day of July, A. D. 1896, Ann Banks, then of said Springfield, since deceased, paid over and delivered to the said plaintiff, William E. Murdock, twelve hundred dollars in cash, and at the same time executed and delivered to him written instructions in the following words, to wit: " To whom it may concern: This is to certify that I have this day appointed W. E. Murdock to look after my property and pay all my honest debts, and after that to keep in trust all of my personal property, and to look after my husband, Nathan E. Banks, the rest of his days, and to pay his honest debts with the balance of my personal property, and after his death, the balance shall go to the people who have cared for me, as W. E. Murdock shall think best." Which said written instructions in court to be produced, will more fully appear.

Second. That the said Ann Banks died on the first day of August, A. D. 1896. That afterwards, to wit, on the twenty-eighth day of October, 1896, the said Nathan E. Banks died, leaving personal property valued at six hundred and forty-eight dollars and fifteen cents, as will appear by an inventory duly filed in the office of the probate court, for said county of Penobscot. That on the third day of December, 1896, the said defend-

ant John N. Bridges, was duly appointed administrator of the estate of the said Ann Banks, and that on the thirtieth day of December, 1896, the said plaintiff, William E. Murdock, was duly appointed administrator of the estate of the said Nathan E. Banks.

Third. That he, the said William E. Murdock, has paid on account of the said Ann Banks since her decease, from the twelve hundred dollars held in trust as aforesaid, the sum of one hundred dollars, leaving a balance still in his hands of eleven hundred dollars.

Fourth. That the legal heirs of the said Ann Banks are Lillian J. Lowell, of Bridgewater, John G. Potter and James M. Potter, both of Monticello, and all in the county of Aroostook, Henry E. Potter of Fort Leavenworth in the state of Kansas, and Mary J. Donahue and Jennie Donahue both of Lowell, in the commonwealth of Massachusetts.

Fifth. That the persons who cared for the said Ann Banks prior to her death and during her last sickness, were the said defendants, Lewis Thornton, Rosetta A. Thornton, and Katherine Hebb, who insist that by the written instructions given to the said plaintiff by the said Ann Banks, at the time she paid over and delivered to him said twelve hundred dollars, the balance ought to be paid to them, as the said William E. Murdock shall think best.

#### AMENDMENT OF BILL.

The said complainant further says that it is his judgment, and he decides that the said respondents Lewis Thornton, Rosetta A. Thornton and Katherine Hebb are the only persons who cared for said Ann Banks in accordance with the terms of said instrument of trust; and that it is his judgment, and he decides that the balance of the personal property, now in his hands, should be equally divided among said respondents, Lewis Thornton, Rosetta A. Thornton and Katherine Hebb.

Sixth. That the said John N. Bridges, as administrator of the estate of the said Ann Banks, has demanded payment from the plaintiff of the said sum of eleven hundred dollars, and insists that said sum belongs to him as administrator of the estate of said Ann

Banks. That the said John N. Bridges has brought a suit at law against the plaintiff, claiming said sum as administrator of the estate of the said Ann Banks, on account of which the plaintiff is exposed to great risk and danger of trouble and expense, and litigation, and that various claims have been and may be preferred against him on behalf of some of the other persons hereinbefore mentioned. That the plaintiff has no interest in the matter in controversy, between the several defendants, and is ready and willing to pay the said sum of money to such of said defendants, if any, as shall be found legally entitled to receive the same; but by reason that they persist in their several adverse claims, the plaintiff is advised that he cannot safely proceed in the matter without the direction and judgment of this court sitting in equity.

Wherefore, the plaintiff prays that the several defendants may be decreed to interplead touching their respective rights in order that the plaintiff may be informed to whom said sum of money now in the hands of said plaintiff, ought to be paid; that the plaintiff may have leave to pay the same into court, which he offers to do for the benefit of such of the parties as shall be found or decreed to be entitled thereto; and that the said John N. Bridges be restrained by the order and injunction of this Honorable Court from commencing or prosecuting any suit at law or in equity against the plaintiff, for the recovery of the said sum now held by him as aforesaid, etc.

The respondents, Lewis Thornton, Rosetta A. Thornton, and Katherine Hebb, appeared and answered. The respondent Bridges appeared and demurred generally to the bill. By agreement, the prayer for the injunction was withdrawn, and the case was reported to the law court upon the demurrer alone. At the argument before the law court the parties agreed, at the bar of the court, that the court might order an interpleader, if the case should require it, regardless of the form in which the case came into the law court.

The facts in this case, as presented by the plaintiff, are as follows: Ann Banks, a short time before her death, deserted by her relatives, and knowing that her husband did not have sufficient

property with which to care for himself, called the complainant, Mr. Murdock, to her bedside, and paid over and delivered to him twelve hundred dollars in cash, at the same time executing and delivering to him written instructions directing the disposition not only of the money paid him, but of any other property which she possessed. Her property at that time consisted wholly of money and other personal property. She owned no real estate. The written instructions are incorporated in the bill. Soon after the death of Mrs. Banks, her husband Nathan E. Banks died, possessed of a few hundred dollars of personal property in his own right. A very small amount of the money paid over to Mr. Murdock by Mrs. Banks has been paid out, so that nearly the entire amount which he received still remains in his hands. A demand has been made upon the complainant Mr. Murdock, by the respondent John N. Bridges, who is administrator of the estate of Mrs. Banks, and who claims the money in Mr. Murdock's hands, as administrator of Mrs. Banks' estate. A demand has also been made upon Mr. Murdock by the other respondents, Lewis Thornton, Rosetta A. Thornton, and Katherine Hebb, who claim the money in his possession, being the only persons who cared for Mrs. Banks, and being the persons designated by Mr. Murdock as entitled to receive the balance in his hands. On the third day of December, 1896, the respondent John N. Bridges was appointed administrator of Mrs. Banks' estate, and later on commenced an action at law against the complainant, Mr. Murdock, to recover the balance in his hands for the benefit of Mrs. Banks' estate.

*E. C. Ryder*, for plaintiff.

Interpleader:—*Atkinson* v. *Manks*, 1 Cow. 691; Sto. Eq. Pl. §§ 291, 297, a; Dan. Chan. Pl. and Pr. *1572; *Williamson* v. *Salmon*, 45 N. J. Eq. 257; Am. & Eng. Ency. Law, Vol. 11, p. 494, and cases cited; Id. Vol. 7, p. 496; *Safe Deposit Co.* v. *Huntington*, 89 Hun, 465; *Crane* v. *McDonald*, 118 N. Y. 468; *Order of the Golden Cross* v. *Merrick*, 163 Mass. 374; 3 Pom. Eq. § 1322; *Cobb* v. *Rice*, 130 Mass. 231; *Brock* v. *Southern Ry. Co.*, 44 S. C. 444; *Warington* v. *Wheatstone*, 1 Jac. 202; *Fowler* v. *Lee*, 8 Gill & Johns. 358; *Nash* v. *Smith*, 6 Conn. 421.

Gift valid:—*Marston* v. *Marston*, 21 N. H. 491; *Hill* v. *Stevenson*, 63 Maine, 364; *Dole* v. *Lincoln*, 31 Maine, 422; *Stone* v. *Hackett*, 12 Gray, 227; *Blanchard* v. *Sheldon*, 43 Vt. 512; *Thompson* v. *Thompson*, 2 How. (Miss.) 737; *Bump* v. *Pratt*, 84 Hun, 201; *Gilman* v. *McArdell*, 99 N. Y. 451; Perry, Trusts, § 586; *Day* v. *Roth*, 18 N. Y. 448; *Borneman* v. *Sidlinger*, 15 Maine, 429; *Dresser* v. *Dresser*, 46 Maine, 48; *Bath Savings Institution* v. *Hathorn*, 88 Maine, 122; *Norway Savings Bank* v. *Merriam*, 88 Maine, 146. A trust in personal property may be created by parol and it is valid, though without consideration, and though unknown to the beneficiary. *Buck* v. *Swazey*, 35 Maine, 41; *Frost* v. *Frost*, 63 Maine, 399; *Cobb* v. *Knight*, 74 Maine, 256; *Williams* v. *Haskins' Estate*, 66 Vt. 378; *Mize* v. *First National Bank*, 1 Mo. App. 99; *Penfold* v. *Mould*, L. R. 4 Eq. 562; *Meek* v. *Kettlewell*, 1 Hare, 464; *Frazier* v. *Perkins*, 62 N. H. 69.

Trust valid:—Sto. Eq. Jur. §§ 964, 979, a; *Power* v. *Cassidy*, 79 N. Y. 609; *Hellman* v. *McWilliams*, 70 Cal. 449; *Tilden* v. *Green*, 130 N. Y. 29.

*P. G. White*, for Bridges.

Such an attempted disposition of the money was clearly testamentary in its character, and was void for non-compliance with the statute in regard to the execution of wills. *Sherman* v. *New Bedford Savings Bank*, 138 Mass. 581; Lewin, Trusts, p. 58; 1 Perry, Trusts, § 97.

If the contention of the complainant be sound, this woman stript herself of all her property, gave it in trust for the benefit of others and left herself, during the remainder of her life, wholly unprovided for,—a most irrational, unnatural, and improbable act for her to do, especially in the view of the fact, that the alleged beneficiaries of the residue were not relatives but strangers.

Such a proposition is borne out neither by the natural meaning of the language used nor by the probabilities of the case; both plainly show that it was her purpose to retain the money as her own while she lived, and that Murdock was to be her agent, merely, to look after it for her.

As such agent, he was accountable to her, and to no one but her. There was no privity between him and the alleged donees. They were neither parties nor privies to the transactions, nor does it appear that they ever had any notice of it till after her death.

This agency the settler might have revoked as readily as she conferred it, and her death did revoke it. Hence the money in the hands of the complainant remained the property of the intestate, and now belongs to her estate.

The complainant was merely the agent of the donor; he is now the debtor of her estate. A bill of interpleader will not lie in such a case. An agent or debtor cannot be converted into a trustee by the fact that a claim has been made upon him for the money in his hands, by a third party, without regard to whether the claim has any foundation or not; for, it is said, that his possession is the possession of his principal. Sto. Eq. Jur. § 817; Dan. Chan. Pl. & Pr. 1757; *Carr* v. *Nat. Security Bank*, 107 Mass. 47.

*M. Laughlin*, for Lewis and Rosetta Thornton and Katherine Hebb.

If any part of the trust can be sustained, the demurrer must be overruled; the provision for payment of her debts and the care of her husband is legally sufficient to create a trust. *Speakman* v. *Speakman*, 48 N. J. Eq. p. 136. If the latter part of the trust fails for any reason, then it will be declared a resulting trust for the heirs at law; but a court of equity still controls the trust. *Dole* v. *Lincoln*, 31 Maine, 422; *St. Paul's Church* v. *Atty. General*, 164 Mass. 197; Perry, Trusts, § 159. Many elements of uncertainty that appear in other reported cases are not to be found in this case.

The instrument of trust may mean (1) that persons who took care of Ann Banks should be entitled to the fund in such proportions as trustee might decide; or (2) that trustee might select the objects of bounty out of those who might have cared to some extent for Ann Banks, and then decide how the fund should be distributed among those persons. If the trustee had not selected, the court might easily determine through a master or otherwise, who did care for Ann Banks. Perry, Trusts, §§ 253–255. The

trust will be enforced, having been perfectly created, if the relation of trustee and cestui que trust has once been established. *Cobb* v. *Knight*, 74 Maine, 253, p. 257, citing Perry, Trusts, § 104. The trust, and the contemporaneous delivery of the money, were a trust "pure and simple", and not a gift, causa mortis or inter vivos. *Savings Bank* v. *Merriam*, 88 Maine, 146; *Savings Institution* v. *Hathorn*, Id. 122.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WISWELL, SAVAGE, JJ.

HASKELL, J. The plaintiff on July 15th, 1896, received from one Ann Banks $1200, and at the same time took from her a writing of the following tenor:—

" To whom it may concern: This is to certify that I have this day appointed W. E. Murdock to look after my property and pay all my honest debts, and after that to keep in trust all of my personal property, and to look after my husband, Nathan E. Banks, the rest of his days, and to pay his honest debts with the balance of my personal property, and after his death, the balance shall go to the people who have cared for me, as W. E. Murdock shall think best."

Under this authority plaintiff paid for Ann Banks one hundred dollars, leaving a balance of $1100 principal in his hands. Ann Banks died August 1st, 1896, and Nathan E. Banks died on the 28th of the following October, leaving a small estate.

I. What is the legal effect of the writing given to the plaintiff by Ann Banks? It is contended that it creates a trust with power of distribution in the plaintiff, who now proposes to execute the same. It does create a trust for two purposes. First, to pay the debts of the cestui, and second, to provide for her husband. Both these purposes have been performed. Can the remaining purpose of distribution be exercised by the plaintiff? It is an attempted bestowal of property upon a class of persons, wholly uncertain, to be selected by plaintiff and is to be distributed among them as he may choose. As a testamentary disposition of property it must fail for

not complying with the statute of wills. As a trust, it must likewise fail for want of certainty and because it is a pure benevolence and not a charity. Suppose the plaintiff had died before attempting to appoint the distributees. Could a court invest a new trustee with power for the purpose, or exercise the power itself? The power attempted to be given was personal, and would have perished with the person. It is not a charity, nor does it even name a certain class of distributees. It says, "to the people who have cared for me as W. E. Murdock shall think best." A more uncertain class of distributees could not be thought of. They are not supposed to be kindred, nor even those who have performed services for which a compensation would be due, for all debts were to be paid, and have been paid, but persons who have been most meritorious in their attentions to the donor, in the opinion of the plaintiff. It is wide open to favoritism and fraud, and obnoxious to a court of equity that favors the equal distribution of estates among kindred, where no charity or particular person, or classes of persons, are named.

This is an executed trust with a power of disposal unexecuted, and the question is whether the power be valid.

In *Fox* v. *Gibbs*, 86 Maine, 87, a testator bequeathed the residue of his estate to trustees, to be by them distributed "for the causes of education and learning, for the promotion and assistance and growth of benevolent and charitable associations and objects, etc., within the county of Cumberland." These trustees were to exercise the power, selection and distribution within the scope of the trust. It was objected that the trust was void from uncertainty, but the court say that it is settled otherwise in this state. It was further objected that the trust was void because the trustees might use the funds for benevolent purposes that were not charitable. The court says: "This objection must be fatal to the validity of the bequest, if such was the intention of the testator. Trusts cannot be upheld which are devoted to mere benevolence or liberality or generosity." The trust was upheld because it was a charity, and not for benevolence that was not charitable.

Trusts of this sort, are usually defined by the words, "benev-

olent" or "charitable." Now benevolent is a word of much broader significance than charitable, and may include what are not charities; and the courts invariably inquire into the meaning of the testator or donor, and if the meaning implies a charity, the trust stands, otherwise not. In this cause neither word is used, therefore such inquiry need not be made. But the language used clearly implies a benevolence, not a charity. It is a kindness to persons who have cared for the donor, not a compensation. The trustee is to name such persons and apportion the fund among them. It is purely good will, a benevolence, as much as if that word had been used. It does not relieve suffering or poverty or distress, or go in aid of education or religion, or of any object known to the law as a charity.

In *Chamberlain* v. *Stearns*, 111 Mass. 267, a trust solely for benevolent purposes is held void. In that case many cases are cited and classified.

In *Nichols* v. *Allen*, 130 Mass. 211, the residue of an estate was bequeathed to executors " to be by them distributed to such persons, societies or institutions as they may consider most deserving," and the court held the trust not a charity and too indefinite to be executed, and that the kindred took by way of resulting trust. The court says: " Two general rules are well settled: 1st. When a gift or bequest is made in terms clearly manifesting an intention that it shall be taken in trust, and the trust is not sufficiently defined to be carried into effect, the donee or legatee takes the legal title only, and a trust results by implication of law to the donor and his representatives, or to the testator's residuary legatees or next of kin. *Briggs* v. *Penny*, 3 DeG. & Sm. 525, and 3 Macn. & Gord. 546; *Thayer* v. *Wellington*, 9 Allen, 283; *Sheedy* v. *Roach*, 124 Mass. 472. 2d. A trust which by its terms may be applied to objects which are not charitable in the legal sense, and to persons not defined, by name or by class, is too indefinite to be carried out. *Morice* v. *The Bishop of Durham*, 9 Ves. 399, and 10 Ves. 521; *James* v. *Allen*, 3 Meriv. 17; *Chamberlain* v. *Stearns*, 111 Mass. 267." Many cases are reviewed in the opinion that need not be mentioned here.

" That a gift should be charitable, there must be some benefit to be conferred upon or duty to be performed towards the public at large, or some part thereof, or an indefinite class of persons. A bequest for the aid or benefit of defined persons is not a charity, but a trust only, as a gift to be distributed among certain poor families named, or certain persons identified in the bequest." *Bullard* v. *Chandler*, 149 Mass. 540.

*Norris* v. *Thompson's Executors*, 19 N. J. Eq. 307, is a case very like the one at bar. A testator directed that his wife might by will devise a certain residue of her estate to such benevolent, religious or charitable institutions as she might think proper. There the power was conferred by will. Here by written declaration. There it was held to be void, because too indefinite and not for charity. A devise or trust for benevolent objects, not charities, is void. *Morice* v. *The Bishop of Durham*, 10 Ves. 522; *James* v. *Allen*, 3 Merivale, 17; *Ellis* v. *Selby*, 1 Myl. & Cr. 286; *Williams* v. *Kershaw*, 1 Keen, 227, note; *Kendall* v. *Grange*, 5 Beav. 300; *Vesey* v. *Jamson*, 1 Sim. & S. 69; *Brown* v. *Yeall*, 7 Ves. 50, note; *Ommanny* v. *Butcher*, Turn. & Russ. 260; *Adye* v. *Smith*, 44 Conn. 60.

In this case the plaintiff is a trustee of an executed trust, and holds the fund as a resulting trust in favor of the donor's heirs at law, and it should be paid to her administrator for distribution. This result does not call for a decree of interpleader, and the defendants' demurrer is therefore well taken.

*Bill dismissed.*