### HARROLD et al. v. FIRST NAT. BANK OF FORT WORTH et al.

#### Civ. A. No. 1962.

United States District Court
N. D. Texas, Fort Worth Division.

Nov. 7, 1950.

William B. Harrell, Dallas, Tex., for plaintiffs.

Robert M. Rowland, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for defendants.

DOOLEY, District Judge.

Josephine Barnes, a widow, died testate in July 1947, a resident of Tarrant County, Texas, and owning an estate worth about $800,000.00. Her last testament consisted of a will and two codicils. The said testament, after making a number of bequests, devised and bequeathed the residue of the estate one-half to the Fort Worth Childrens Hospital and the other one-half to Norman Nelson as trustee of a trust for financial aid in the education of worthy boys at Texas Christian University. The said trust is the subject of controversy herein. The pertinent testamentary provisions are quoted in the margin.[1]

Norman Nelson was named independent executor in said will, but he declined such

1. Item Five of the original will reads as follows: "All of the balance of my property, of which I may die seized and possessed, I give, devise and bequeath, one-half to the Fort Worth Childrens' Hospital, and one-half to my trustee hereinafter named, in trust, however, for the purposes herein specified. All of the income from such last named one-half of the residue of my estate shall be used by my said trustee to provide scholarships for worthy boys who are unable to pay their own expenses in Texas Christian University. The boys, to whom such scholarships and such help as my trustee shall deem proper and necessary, shall be selected by my said trustee. My said trustee shall have the power and

office, and the kin of the testatrix waived legal right of appointment to administer the estate. The First National Bank of Fort Worth filed an application for probate of said testament and appointment as administrator with the will annexed. A citation on the application was duly issued and posted in regular form except that it was directed to the "Sheriff or any Constable of Tarrant County", instead of the "Sheriff or any Constable within the State of Texas". On August 19, 1947, the said will was probated and letters of administration c. t. a. issued to the Bank, which still holds office under said appointment. Some more than a year later the Fort Worth Childrens' Hospital filed in said probate cause an application for partition and distribution of the estate. In June 1949 the Court of Civil Appeals in Mitchell et al. v. Rutter et al., 221 S.W.2d 979, held that a default judgment in the probate of a will, resting on a notice directed like the one aforesaid, was void. The said pending application for distribution and intimations of an impending contest of said will and codicils, as well as misgivings raised by the foregoing court decision as to the validity of the 1947 judgment probating said testament, led the administrator c. t. a. in 1949 to file an application therein for a new probate of said testament, also opposing immediate distribution of the estate and for declaratory judgment in respect to the disposition of certain legacies to persons outlived by the testatrix. The plaintiffs in the present suit, being cousins of the testatrix and among her heirs at law (and all the other heirs at law), were duly cited on said administrator's application to again probate said testament, deny immediate distribution and for declaratory judgment, but these plaintiffs did not appear at the hearing thereon in the County Court. Thereafter in 1949 certain kin of the testatrix, not including the plaintiffs herein, filed in the County Court a contest of said probated will and codicils alleging undue influence, testamentary incapacity of the testatrix and that the proceedings in probate were a nullity because the notice therein was not properly directed in compliance

authority to sell and exchange any of such property and invest and manage such property in such way as to obtain the greatest amount of income for such purpose."

The language in question of the first codicil reads as follows:

"Item Five of my last will and testament provides for a trust to pay the expenses of worthy boys in the Texas Christian University, but makes no provision as to the length such trust as therein provided should continue. I so give, devise and bequeath such one-half of the remainder of my estate to Norman E. Nelson, of Fort Worth, Texas, as independent executor and trustee for the purposes named in my said will, and hereby provide that such trust shall continue only until twenty years after the death of the said Norman E. Nelson, at which time all of the property of every character and description so held by the trustee of such trust shall descend to and invest in Texas Christian University as a part of its endowment fund.

"Upon the death, resignation or inability to act for any cause on the part of my said trustee, Norman E. Nelson, then any District Court of Tarrant County, Texas, shall have the power and authority to name a successor trustee or trustees."

The language in question of the second codicil reads as follows:

"Item Five of my last will and testament provides for a trust to pay the expenses of worthy boys in the Texas Christian University, but makes no provision as to the length such trust as therein provided should continue. I so give, devise and bequeath such one-half of the remainder of my estate to Norman E. Nelson, of Fort Worth, Texas, in trust, as trustee, for the purposes specified in my said will, my said trustee being authorized to use all of the income and so much of the corpus of this trust as he deems proper for such purposes; and I hereby provide that such trust shall continue only until twenty years after the death of the said Norman E. Nelson, at which time all of the property of every character and description so held by the trustee of such trust shall descend to and invest in Texas Christian University as a part of its endowment fund.

"Upon the death, resignation or inability to act for any cause on the part of my said Trustee, Norman E. Nelson, then any District Court of Tarrant County, Texas, shall have the power and authority to name a successor trustee or trustees."

with the governing rule of civil procedure in Texas. The said will contest, application for distribution, and application to probate and for declaratory judgment, all three were heard by the Court, and on December 2, 1949 judgment was rendered probating said will and codicils and adjudging that the legacies left to legatees dying before the testatrix, had lapsed and should constitute a part of the residuary estate, but the application for immediate partition and distribution was reserved for later action. The contestants noted their appeal from the order probating the will and codicils.

The said appeal was heard by the district court in February 1950, and judgment was rendered therein which not only repeated the probate of said will and codicils, but also recited, "that said will and codicils constitute and are hereby declared to be in all respects a valid testamentary disposition of the entire estate of Mrs. Josephine Harrold Barnes", and further directed the payment of legacies and bequests, and that final distribution of the estate should be made by the probate court as provided in said testament. The plaintiffs in the present suit, though they had stood aloof from said appellate proceedings, then filed a motion for new trial in the district court and sought to have the court strike from its judgment any part thereof which purported to construe Item Five (quoted above in the margin) of the said original will and related provisions in the codicils, and which decreed that said will and codicils were a valid testamentary disposition of the entire estate of the testatrix, and which ordered the county court to cause distribution of a part thereof to The First National Bank of Fort Worth as trustee of the scholarship fund of Texas Christian University. The said motion was overruled and the plaintiffs gave notice of appeal to the Court of Civil Appeals, but said appeal was abandoned.

Next on March 3, 1950, the county court, in conformity with the proceedings on appeal in the district court, entered a judgment reciting, in part, that the administrator c. t. a. "shall deliver to Fort Worth Childrens' Hospital, Inc., one-half (½) of the residue of said estate and to The First National Bank as trustee for the Texas Christian University Scholarship Fund the remaining one-half of the residue of said estate".

Thereafter on March 30, 1950 the plaintiffs filed the present suit in this Court, and, claiming to be the ranking heirs at law of said testatrix, sought a declaratory judgment, to sustain their theory that said purported trust declared in the will and codicils of said testatrix is invalid so that the portion of her estate which would have constituted the assets of said trust, became intestate property inherited by the plaintiffs as primary heirs at law of the decedent. The claim of the plaintiffs more closely defined is that Item Five of the will, and the related provisions of the codicils, did not create any real trust covering the one-half of the residuary estate, but said parts of the will and codicils did nothing more than entrust to the named executor special and personal powers with reference to his use of a portion of the estate, or if same did constitute a trust, it was a personal and private trust involving special powers of said trustee to administer the trust property at his discretion, and that in either event the special powers so given to the executor or trustee, as the case may be, to administer such property at his discretion, ceased when he declined to accept the trust, and thereupon the powers or trust lapsed or that the courts had no power to administer a personal or private trust, and said part of the estate simply became intestate property of the decedent. The plaintiffs herein further claim that, if they succeed in defeating the aforesaid scholarship trust, they will inherit the entire one-half of the residue estate and that the other heirs at law of the testatrix and their assigns will take no part of said residue.

The said Norman Nelson died in February 1949, without having been put to the decision either to accept or reject the duties of trustee under the testament of said testatrix, and in April 1949 a district court of Tarrant County appointed said The First National Bank of Fort Worth as successor trustee of the trust created under

the language of the testamentary provisions in question.

The defendants in this suit have moved to dismiss same on the grounds (1) that the controversy presented is in the field of probate cognizance, and accordingly within the exclusive jurisdiction of the county court of Tarrant County in the first instance and secondarily in a district court of said County on appeal from the county court, and (2) that the complaint fails to state a claim against the defendants upon which relief can be granted, since it appears therefrom, and the attached exhibits, that the last testament of the testatrix in the particular here in question created a valid trust, in the nature of a public charity, and that the language creating such trust is clear and unambiguous and needs no construction.

The record before judgment in this case consists of plaintiffs' complaint and exhibits, defendants' motion, stipulations, certified copies of the proceedings in the probate court and on appeal in the district court, and certified copies of the proceedings in the district court in the appointment of a successor trustee to execute the testamentary trust provided in the will and codicils of said testatrix.

The plaintiffs in this suit are John Sears Harrold, Bishop Sears Harrold and Elizabeth Sears Harrold, and the defendants are The First National Bank of Fort Worth and Texas Christian University, both corporations.

▮▮ The first law question is that of Federal jurisdiction, and this inquiry leads immediately to the probate law of Texas. Under the Constitution of Texas original probate jurisdiction is exclusively in the county court.[2] The probate statutes of Texas contain certain articles grouped under the heading "Administration Under a Will" and include an article authorizing proceedings in a probate court to annul any certain part or parts of a will after its probate.[3] This is quite an old statute. The remedy of said statute likely is open only so long as administration is still pending in the probate court. The original jurisdiction of such proceedings is in the probate court exclusively, at least during the pendency of administration, and it is part of the court's general probate powers in dealing with the entire administration of the particular estate.[4] An action to annul part of a will under the authority of said statute would be clearly a subject of probate jurisdiction.[5] Of course distribution of judicial powers under the laws of a State cannot ipso jure control Federal jurisdiction, but the probate system of a State in settling the subjects of probate cognizance can become pertinent objectively at times in testing Federal jurisdiction. This is true for the reason that matters fairly of probate nature are outside the general equity powers of the Federal courts.

▮ The plaintiffs herein present their suit in the guise of an action for construction of the aforesaid testamentary trust by declaratory judgment, but that understates the real purpose of the plaintiffs. The remedy of declaratory judgment when

2. "The County Court shall have the general jurisdiction of a Probate Court; they shall probate wills, * * * grant letters testamentary and of administration, settle accounts of executors, transact all business appertaining to deceased persons, * * * including the settlement, partition and distribution of estates of deceased persons * * *." The Constitution of Texas, Art. 5, Sec. 16, Vernon's Ann.St. Ferguson v. Ferguson, Tex.Civ.App., 66 S.W.2d 755.

3. "When a will has been probated, its provisions and directions shall be specifically executed, unless annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate. Such proceeding shall be by application in writing, filed with the clerk of the court, setting forth the objectionable provisions and directions in the will, and the grounds of objections." R.S. of Texas 1925, Title 54, Chapter Twelve, Art. 3433.

4. Hilgers v. Hilgers, Tex.Civ.App., 159 S. W. 851; O'Neil v. Norton, Tex.Com. App., 29 S.W.2d 1060; Messer v. Carnes, Tex.Civ.App., 71 S.W.2d 580; White v. White, Tex.Civ.App., 149 S.W.2d 1031.

5. Brooker v. Brooker, 130 Tex. 27, 106 S. W.2d 247.

proper is equally suited to determine either the construction or validity in whole or in part of a will, but there is a distinction between the two kinds of suits. If this were precisely a suit for simple construction, still, in spite of the rule that the district courts have general jurisdiction of suits to construe wills, the local county court in its probate province, pending the administration of this estate, would have jurisdiction, concurrent if not exclusive, to construe the will in any particular for the purpose of determining the proper course of administration.[6] The plaintiffs' suit, however, does not concede that the testamentary trust is valid, yet ambiguous, so as to need construction, but claims that same is invalid under principles in the law of trusts. Thus the plaintiffs' suit is essentially an action to annul the testamentary trust, in other words, a proceeding in principle of the kind regulated by the aforesaid statute, and consequently is a subject within the province of probate jurisdiction in Texas. This brings us to the inquiry whether said rule of probate jurisdiction in Texas is significant as a test of Federal jurisdiction in this suit. It seems to be decisive against Federal jurisdiction under the decision in Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664, which dealt specifically with the probate law of Texas. In that case it was pointed out, among other things, that the probate proceedings there involved were in the nature of in rem actions. The same is likewise true of a proceeding to annul part of a probated will under the above statute of Texas.[7] It follows that the subject matter of this suit, in the setting of the Texas law, a proper criterion, stands as a question of true probate cognizance, and this court is without jurisdiction.[8] The main case relied on by the plaintiffs is Waterman v. Canal-Louis-

iana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80. The two cases on first reading may well seem out of joint, but it will be noted that the Sutton case is specifically controlled by the special and in some respects peculiar probate statutes of Texas while the Waterman case, which came up from Louisiana, is not hinged, so far as the decision reveals, on any special and peculiar feature of the statutory probate law in Louisiana. The Sutton case cites the Waterman case, without any intimation of a conflict, and evidently the Supreme Court regards them as consistent decisions. The key to such consistency doubtless is that Louisiana does not have probate statutes like those of Texas mentioned in the Sutton decision and in this opinion. In fact this very explanation is suggested by the Fifth Circuit Court of Appeals in Heath v. Jones, 168 F.2d 460.

The jurisdiction of this court is also questionable for another reason, whatever might have been true as to a suit filed at an earlier time. The probate court has already adjudicated, impliedly at least, that the testamentary trust in question is valid and has ordered distribution of the trust property to the trustee, all before the present suit was filed. So far as it is a question of construction, the will has been construed by a competent court. So far as it is a question of legal validity the testamentary trust has been found valid by a competent court. In Texas the probate court is a court of general jurisdiction and its original jurisdiction is exclusive in the distribution of estates administered by the court.[9] A judgment of the probate court, unless plainly void, however erroneous, is not subject to collateral attack under the state law, and can be reviewed only by a proper direct proceeding.[10] The Waterman case so strongly relied on by plain-

---

6. Maibaum v. Union Trust Co., Tex.Civ. App., 291 S.W. 924; Ragland v. Wagener, 142 Tex. 651, 180 S.W.2d 435.

7. Taylor v. Dinsmore, Tex.Civ.App., 114 S.W.2d 269; Gardner v. Union Bank & Trust Co., Tex.Civ.App., 159 S.W.2d 932.

8. O'Callaghan v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101.

9. Zamora v. Gonzalez, Tex.Civ.App., 128 S.W.2d 166; Boedker v. Boedker, Tex. Civ.App., 258 S.W. 566.

10. Hudgins v. Leggett, 84 Tex. 207, 19 S. W. 387; Kelley v. Harsch, Tex.Civ.App., 161 S.W.2d 563; Heavey v. Castles, Tex. Civ.App., 12 S.W.2d 615; Jones v. Wynne, 133 Tex. 436, 129 S.W.2d 279;

tiffs points out affirmatively that in dealing with the question of federal jurisdiction over suits which have some impact upon probate proceedings in a state court a line must be drawn between cases which will not and those which will interfere with the exercise of the probate powers and orderly proceedings in the state court. The probate court here has rendered judgment which is now final as respects ordinary appeal, and since the district court has sustained the validity of this testamentary trust in a prior appeal, any review by certiorari also may be foreclosed.[11] In any event it is now too late to appeal and no move has been made for a review by certiorari. Any judgment of this court for the relief sought by the plaintiffs, would necessarily interfere with the administration and distribution of the estate in accordance with the decisions and orders already made by the probate court, within its special province, and not merely interfere but actually contradict such proceedings and judgments. The action of the probate court as it now stands is conclusive, and by that token federal jurisdiction either fails or at least should be declined in the present suit.[12] It seems that the last views must be of equal force even if it could be said that the administration is not still pending at this time.

Strictly speaking what has been said may not in a technical sense denote a lack of intrinsic jurisdiction as a federal court, but accurately the impediment may be more in the nature of res judicata,[13] or possibly a question of comity between the national and state governments. Suffice it to say that any federal jurisdiction abstractly should be an inert jurisdiction, in the circumstances of the present record.

The other ground of the motion presents that the testamentary trust in question on its face is clearly valid. Of course this is an alternative point which is not reached if the first ground of the motion is well taken, but in view of that contingency such second ground will also be discussed. The question of it being a charitable trust is the issue. The courts have never become committed to any hard and fast definition of such a trust. Any definition will be either diffused by generality or else constricted by particularity. In other words it is hardly feasible to grasp both clarity and flexibility in a single definition. The Supreme Court of the United States in Perin v. Carey, 24 How. 465, 65 U.S., 465, 16 L.Ed. 701, well says "Charity, in a legal sense, is rather a matter of description than of definition". It is quite clear that the concept has broadened with the march of time and in the present day sense the word "charitable" in relation to trusts, is no more synonymous with eleemosynary than with philanthropic. It partakes of both. In the early Colonial days of this country and even into the nineteenth century education was looked on in much of the land as a private rather than a public responsibility, yet at this time it is universally agreed that the provision of educational facilities open to all is a public duty of paramount importance. So it is that a trust in behalf of education and for the benefit of the public generally or for some indefinite but substantial section of the public, particularly when the needy are in mind, is held to be a charitable trust with little if any dissent, and only a few representative cases from different parts of the country will be cited.[14] Undoubtedly that

Dallas Joint Stock Land Bank v. Forsyth, 130 Tex. 563, 109 S.W.2d 1046; Lipscomb v. Lofland, Tex.Civ.App., 141 S.W.2d 983; Harrison v. Craddock, Tex. Civ.App., 178 S.W.2d 296; Porter v. Sweeney, 61 Tex. 213.

11. In re Pearce, 43 Tex.Civ.App. 398, 96 S.W. 1094.

12. Asher v. Bone, 9 Cir., 100 F.2d 315; Montgomery v. Gilbert, 9 Cir., 77 F.2d 39; McPherson v. Mississippi Valley Trust Co., 8 Cir., 122 F. 367; Booth v. Merchants National Bank, 5 Cir., 100 F.2d 478; McCormick v. East Coast Enterprises, 5 Cir., 57 F.2d 859; Folk v. Monsell, 10 Cir., 71 F.2d 816.

13. Blythe v. Hinckley, 173 U.S. 501, 19 S.Ct. 497, 43 L.Ed. 783.

14. Quinn v. Peoples Trust & Sav. Co., 223 Ind. 317, 60 N.E.2d 281; Dye v. Beaver Creek Church, 48 S.C. 444, 26 S.E. 717; Cooke v. Woman's Medical College, 82

is the view prevailing in Texas.[15]

The plaintiffs' counsel, however, in resisting the view that the present trust is a charitable trust contends for one thing that its restriction to education at Texas Christian University keeps it from passing muster as a charitable trust. This position is refuted by many cases.[16] The plaintiffs also argue that the trust in question is not strictly a trust but instead the grant of a power personal and exclusive to the named trustee Nelson, but this same point has been rejected even when better fortified than in the present case.[17]

A short summary will confirm that the testamentary trust in question meets the test of a charitable trust. In Item Five of her original will the testatrix devised one-half of her residue estate in trust, for an unlimited time, and directed that all of the income thereof "shall be used by my said trustee to provide scholarships for worthy boys who are unable to pay their own expenses in Texas Christian University", and delegated to the trustee the selection of such boys. The first codicil limited the duration of the trust to a term continuing only until twenty years after the death of the original trustee, when the trust estate would go to the endowment fund of Texas Christian University, and also specified that upon the death, resignation or inability of the original trustee, then a successor trustee could be named by court appointment. The second codicil expanded the expendable funds of the trust so that not only all of the income but "so much of the corpus of this trust" as the trustee deemed proper could be used for the purposes of the trust. This trust is simple in purpose and statement. It plainly speaks

a benevolent interest in the cause of education. The testatrix had a charitable spirit which looked beyond individuals to a class, a described section of the general public. Her bounty is impersonal and by that token rises to the dignity of a public benefaction. It has the promise of definite social good and is geared in step with the general public goal of widespread education for the youth of the state. Its resources are ample to aid a fairly large number of boys. A design of this kind has rightful place as a charitable trust.

The defendants' motion to dismiss this suit is granted, and such an order will be entered.

N.J.Eq. 179, 87 A. 131; Alstork v. Curry, 207 Ala. 135, 91 So. 796; In re Wright's Estate, 284 Pa. 334, 131 A. 188.

15. Powers v. First National Bank, 138 Tex. 604, 161 S.W.2d 273; Boyd v. Frost Nat. Bank, 145 Tex. 206, 196 S.W.2d 497; Moore v. Sellers, Tex.Civ.App., 201 S.W.2d 248.

16. Taylor v. Columbian University, 226 U. S. 126, 33 S.Ct. 73, 57 L.Ed. 152; Speer v. Colbert, 200 U.S. 130, 26 S.Ct. 201, 50 L.Ed. 403; Morgan v. National Trust Bank, 331 Ill. 182, 162 N.E. 888; Gallaher v. Gallaher, 106 W.Va. 588, 146 S.E. 623; Hoyt v. Bliss, 93 Conn. 344, 105 A. 699; Field v. Drew Theological Seminary, C.C., 41 F. 371; Barnard v. Adams, C.C., 58 F. 313.

17. Morse v. First National Bank, Tex. Civ.App., 194 S.W.2d 578.